COPY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA                     :          **SEALED**
                                             :          **INDICTMENT**
              - v. -                         :
                                             :          17 Cr. 154
THOMAS SCHMIDT,                              :
JOSEPH KAPLAN,                              :
MICHAEL PICCIONE,                           :
JOHN CALVACCHIO,                            :
   a/k/a "Uncle,"                           :
JEFF AMATO, and                             :
GARY PAGANELLI,                             :
                                             :
                   Defendants.               :
                                             :
- - - - - - - - - - - - - - - - - - -x


### THE RACKETEERING VIOLATIONS

#### COUNT ONE

The Grand Jury charges:

#### THE ENTERPRISE

At all times relevant to this Indictment:

1.    THOMAS SCHMIDT, the defendant, others known and unknown, were members and associates of a criminal organization known as the New Roc Hells Angels ("New Roc HA" or the "Enterprise") whose members and associates engaged in, among other activities, narcotics trafficking, extortion, money laundering, contraband cigarettes, prostitution and altered motor vehicle parts.  The Enterprise operated primarily in the areas of Westchester, Putnam and Dutchess counties in New York

State.

2.    The Hells Angels Motorcycle Club, better known as (and hereinafter referred to as) the Hells Angels, was an international organization with hundreds of Chapters and thousands of members. The New Roc Chapter of the Hells Angels was one of the Chapters based in New York.

3.    Within the United States, the Hells Angels was composed of individual Chapters in various locations throughout the United States. Members of the Hells Angels belonged to a specific Chapter, and answer to the officers for that Chapter. The New Roc HA - like each Hells Angels Chapter - was an organized enterprise that adhered to a hierarchical chain of command with a president, vice-president, treasurer/secretary, and sergeant at arms/enforcer, as well as general members. Each officer had specific obligations.

4.    Chapter members were identified by the apparel ("colors") and emblems ("patches") they wore. Full membership in Hells Angels was referred to as "full-patch," in reference to a member's ability -- only with the authority of the Enterprise -- to wear the full Hells Angels three-piece patch on jackets and vests.  The full patch included the club emblem (i.e., winged death head), surrounded by a top "rocker" with the words "Hells

Angels" and a bottom "rocker" identifying the territory being claimed. The official colors of the Hells Angels patch were red lettering displayed on a white background (hence the club's nickname "The Red and White"). Members of the Hells Angels may also wear a diamond-shaped one-percenter patch (displaying "1%" in red on a white background with a red border). The term one-percenter reflected the Hells Angels' recognition that its members are among the one percent of motorcyclists who are non-law-abiding outlaws.

5.   Chapter meetings were held regularly and are referred to as "church." Only "full-patched" members were allowed to attend "church."

6.   The Chapter President has ultimate decision-making authority for the activities of the enterprise, reported directly to regional officers of the Hells Angels, and was required to attend regularly-held regional meetings. Representatives of Hells Angels Chapters on the East Coast met periodically, including during East Coast Officer Meetings (ECOM). The location of the ECOM rotated from state to state. The ECOM agenda items included, but are not limited to: Hells Angels Chapter updates, Hells Angels world events, Hells Angels world votes, and Hells Angels financial matters. In addition,

3

Hells Angels Chapters were required to pay Chapter dues to the Hells Angels national officers for the Hells Angels world-wide organization.

7.    Prospective members were brought into the Chapters through a lengthy process designed to measure a prospective member's commitment to the Hells Angels and to guard against law enforcement infiltration. After associating with the Hells Angels for a period of time, an individual may be identified as a "hang-around" and may do menial tasks and other duties to gain the respect of the members.

8.    After a period of time, "hang-arounds" may be sponsored by a Hells Angels member and may become a prospective member (or "prospect") for that Chapter. While a prospective member, one must follow the orders of full-patched members and run various errands. This can include participation in legal and illegal activities. After a period of time, if the prospective member receives the unanimous vote of all Chapter members, he is allowed to become a full member of the Hells Angels. A prospect may wear only the bottom rocker of the Hells Angels patch. Associates of Hells Angels who are not members - including the Hells Angels members' girlfriends and wives, may wear the number "81," as in "Support 81." The "8" and "1" stand for the

4

respective positions in the alphabet of H and A.

9.    Like other Hells Angels, members of the New Roc HA Chapter paid dues and assessments to the Chapter and to the national Hells Angels. The New Roc HA Chapter also raised money from the sale of support gear at parties, including items such as t-shirts and stickers. These funding techniques were used to fund the continued operation of the Chapter and the international Hells Angels organization. Funding from members was also used to create a legal defense fund to cover members' criminal legal fees resulting from prosecutions for conducting club business, including acts of violence. Funding for the Enterprise was also generated through illegal activities, as members and associates engaged in illegal activity pay a percentage of proceeds of, or surrender some of the assets derived from, criminal activities to the Chapter and leadership.

10.    The New Roc HA also utilized support motorcycle clubs (hereinafter a "support club") to assist it in conducting illegal activities such as trafficking in narcotics and contraband cigarettes. A support club for the Hells Angels was a motorcycle club that supports the Hells Angels through attending various functions, taking orders from the Hells Angels, and providing security for Hells Angels members and events. The

Hells Angels often recruited new prospects from these various support clubs.

11.   The New Roc HA, including its leadership, its membership, and its associates, constituted an "enterprise," as defined by Title 18, United States Code, Section 1959(b)(2) and 1961(4), that is, a group of individuals associated in fact, that engaged in and the activities of which affected interstate commerce.  The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.  At all times relevant to this Indictment, the New Roc HA was engaged in, and its activities affected, interstate and foreign commerce.

12.   THOMAS SCHMIDT, the defendant, was a New Roc HA member who coordinated with members and leaders of the Enterprise in carrying out unlawful and other activities in furtherance of the conduct of New Roc HA's affairs. During a portion of the charged time period, SCHMIDT was the Vice-President of the New Roc HA. SCHMIDT, and others known and unknown, participated in the operation and management of the Enterprise, and participated in unlawful and other activities in furtherance of the conduct of the Enterprise's affairs.

PURPOSES OF THE ENTERPRISE

13.  The purposes of the Enterprise included, but were not limited to, the following:

a.   Preserving, protecting, and expanding the power, territory, and profits of the Enterprise through the use of intimidation, extortion, narcotics distribution, money laundering, trafficking in contraband cigarettes, prostitution and acts and threats of violence.

b.   Enriching the members and associates of the Enterprise through, among other things, intimidation, extortion, narcotics distribution, money laundering, prostitution, trafficking in contraband cigarettes and holding events throughout the Hudson Valley in New York.

c.   Promoting and enhancing the Enterprise and the activities of its members and associates.

d.   Assisting, supporting, and obtaining assistance and support from, the regional, national, and international Hells Angels in their activities, including: legal matters, rivalries with other motorcycle clubs, exchanging information about current membership, exchanging information about criminal investigations, relying on other Hells Angels Chapter members to assist the enterprise in furthering its

7

criminal conduct, and aiding and protecting other Hells Angels'
members in their criminal activity.

      e.   Funding the operation of the Hells Angels.

      f.   Promoting a climate of fear and keeping
victims, potential informants, witnesses, and others in fear of
the Enterprise and in fear of its members and associates through
violence and threats of violence.

<u>MEANS AND METHODS OF THE ENTERPRISE</u>

      14.  Among the means and methods employed by the
members and associates of the Enterprise in conducting and
participating in the conduct of the affairs of the Enterprise
were the following:

      a.   Members and associates of the Enterprise
committed, conspired, attempted, and threatened to commit acts
of violence to protect and expand the Enterprise's criminal
operations.

      b.   Members and associates of the Enterprise
used threats of violence and physical violence against other
members and associates to enforce and maintain discipline within
the enterprise.

      c.   Members and associates of the Enterprise
committed, conspired, attempted, and threatened to commit acts

of violence against rival gang members and other individuals adverse to the enterprise.

      d.   Members and associates of the Enterprise obtained, possessed, and used firearms.

      e.   Enriching the members and associates of the Enterprise through, among other things, the distribution and sale of controlled substances, including cocaine, marihuana, crystal methamphetamines and oxycodone by certain New Roc HA members and associates.

<u>THE RACKETEERING CONSPIRACY</u>

      15.   From at least in or about 2008, up to and including in or about August 2014, in the Southern District of New York and elsewhere, THOMAS SCHMIDT, the defendant, and others known and unknown, being persons employed by and associated with the Enterprise described above, to wit, the New Roc HA, knowingly combined, conspired, confederated, and agreed together and with each other to violate the racketeering laws of the United States, to wit, Section 1962(c) of Title 18, United States Code, that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the New Roc HA, which was engaged in, and the activities of which affected, interstate and foreign commerce, through a pattern of

racketeering activity consisting of:

a.     multiple offenses involving the distribution of controlled substances, including cocaine, marihuana and oxycodone, in violation of the laws of the United States, namely Title 21, United States Code, Sections 812, 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), 841(b)(1)(D), and 846, and Title 18, United States Code, Section 2; and

b.     multiple acts indictable under Title 18, United States Code, Section 1956 (money laundering) and Title 18, United States Code, Section 2;

It was a part of the conspiracy that the defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the Enterprise.

## SPECIAL SENTENCING FACTORS

16.   From at least in or about 2008 through in or about August 2014, in the Southern District of New York and elsewhere, THOMAS SCHMIDT, the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

17.   It was a part and an object of the conspiracy

10

that THOMAS SCHMIDT, the defendant, and others known and unknown, would and did distribute and possess with intent to distribute 5 kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A) and 846.

(Title 18, United States Code, Section 1962(d).)

### COUNT TWO

The Grand Jury further charges:

18. At all times relevant to this Indictment, the New Roc HA, as described in Paragraphs 1 through 14 of Count One of this Indictment, which are realleged and incorporated by reference as though fully set forth herein, including leadership, membership and associates, constituted an enterprise, as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, an association in fact of individuals that was engaged in, and the activities of which affected, interstate and foreign commerce. The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

19. At all times relevant to this Indictment, the

11

New Roc HA, through its members and associates, engaged in racketeering activity, as that term is defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is, (a) multiple offenses involving the distribution of controlled substances, including cocaine, marihuana and oxycodone, in violation of the laws of the United States, namely Title 21, United States Code, Sections 812, 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), 841(b)(1)(D), and 846; and (b) multiple acts indictable under Title 18, United States Code, Section 1956 (money laundering).

20.   On or about December 29, 2012, in the Southern District of New York, THOMAS SCHMIDT and JOSEPH KAPLAN, the defendants, and others known and unknown, for the purpose of gaining entrance to and maintaining and increasing position in the New Roc HA, an enterprise engaged in racketeering activity, as described above, intentionally and knowingly, did assault an individual with a dangerous weapon, and aided and abetted the same, to wit, SCHMIDT and KAPLAN, along with other members of the Enterprise, assaulted members of a rival gang known as the Diablos with a hammer, in violation of New York Penal Law, Sections 20.00 and 120.05.

(Title 18, United States Code, Sections
1959(a)(3), and 2.)

12

## COUNT THREE

The Grand Jury further charges:

21.    From at least in or about 2008, up to and including in or about August 2014, in the Southern District of New York and elsewhere, THOMAS SCHMIDT, MICHAEL PICCIONE, JOHN CALVACCHIO, a/k/a "Uncle," JEFF AMATO, and GARY PAGANELLI, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

22.    It was a part and an object of the conspiracy that THOMAS SCHMIDT, MICHAEL PICCIONE, JOHN CALVACCHIO, a/k/a "Uncle," JEFF AMATO, and GARY PAGANELLI, the defendants, and others known and unknown, would and did distribute and possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

23.    The controlled substances that THOMAS SCHMIDT, MICHAEL PICCIONE, JOHN CALVACCHIO, a/k/a "Uncle," JEFF AMATO, and GARY PAGANELLI, the defendants, conspired to distribute and possess with intent to distribute were: (1) 5 kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section

13

841(b)(1)(A); (2) mixtures and substances containing quantities
of oxycodone, in violation of Title 21, United States Code,
Section 841(b)(1)(C); and (3) mixtures and substances containing
a detectable amount of marihuana, in violation of Title 21,
United States Code, Section 841(b)(1)(D).

(Title 21, United States Code, Section 846.)

## COUNT FOUR

The Grand Jury further charges:

24.   From in or about July 2013 through in or about
July 2014, in the Southern District of New York and elsewhere,
THOMAS SCHMIDT and MICHAEL PICCIONE, the defendants, and others
known and unknown, willfully, and knowingly did combine,
conspire, confederate, and agree together and with each other to
commit an offense against the United States, to wit, money
laundering, in violation of Title 18, United States Code,
Sections 1956(a)(1)(A)(i).

25.   It was a part and an object of said conspiracy
that THOMAS SCHMIDT and MICHAEL PICCIONE, the defendants, and
others known and unknown, willfully and knowingly would and did
conduct and attempt to conduct financial transactions affecting
interstate commerce and foreign commerce, which transactions
involved the proceeds of specified unlawful activity, that is,

14

narcotics trafficking, with the intent to promote the carrying on of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

(Title 18, United States Code, Section 1956(h).)

## COUNT FIVE

The Grand Jury further charges:

26.  On or about June 5, 2012, in the Southern District of New York and elsewhere, GARY PAGANELLI, the defendant, intentionally and knowingly did distribute, and possess with intent to distribute, a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

27.  The controlled substance involved in the offense was mixtures and substances containing a detectable amount of cocaine, in violation of Section 841(b)(1)(C) of Title 21, United States Code.

(Title 21, United States Code, Sections 812, 841(a)(1) and (b)(1)(C)).

## COUNT SIX

The Grand Jury further charges:

28.  On or about September 30, 2015, in the Southern

15

District of New York and elsewhere, JEFF AMATO, the defendant, intentionally and knowingly did distribute, and possess with intent to distribute, a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

29.   The controlled substance involved in the offense was mixtures and substances containing a detectable amount of methamphetamine, in violation of Section 841(b)(1)(C) of Title 21, United States Code.

(Title 21, United States Code, Sections 812, 841(a)(1) and (b)(1)(C)).

## FORFEITURE ALLEGATION

(Count One: RICO Offenses)

30.   The allegations contained in Count One of this Indictment are hereby repeated, realleged, and incorporated by reference herein as though fully set forth at length for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 1963.   Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 1963 in the event of the defendant's conviction under Count One of this Indictment.

16

31.   THOMAS SCHMIDT, the defendant:

a.   has acquired and maintained interests in violation of Title 18, United States Code, Section 1962, which interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1);

b.   has an interest in, security of, claim against, and property and contractual rights which afford a source of influence over, the enterprise named and described herein which the defendant established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962, which interests, securities, claims, and rights are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(2); and

c.   has property constituting and derived from proceeds obtained, directly and indirectly, from the aforesaid racketeering activity, in violation of Title 18, United States Code, Section 1962, which property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3).

32.   The interests of the defendant subject to forfeiture to the United States pursuant to Title 18, United

States Code, Section 1963(a) include the amount of gross proceeds received by the defendant derived from racketeering activities as alleged in Count One of this Indictment.

### Substitute Assets Provision

33.   If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

  a. cannot be located upon the exercise of due diligence;

  b. has been transferred or sold to, or deposited with, a third person;

  c. has been placed beyond the jurisdiction of the Court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 981, 18 U.S.C. § 1963(m), and 28 U.S.C. § 2461, to seek forfeiture of any other property of the defendant up to the value of the forfeitable property.

(Title 18, United States Code, Sections 981 and 1963.)

### FORFEITURE ALLEGATION

(Count Three: Narcotics Conspiracy)

34.   As a result of committing the controlled

18

substance offense alleged in Count Three of this Indictment,

THOMAS SCHMIDT, MICHAEL PICCIONE, JOHN CALVACCHIO, a/k/a

"Uncle," JEFF AMATO, and GARY PAGANELLI, the defendants, shall

forfeit to the United States, pursuant to 21 U.S.C. § 853, any

and all property constituting or derived from any proceeds the

defendant obtained directly or indirectly as a result of the

violation and any and all property used or intended to be used

in any manner or part to commit or to facilitate the commission

of the violation alleged in Count Four of this Indictment,

including but not limited to a sum in United States currency

representing the amount of proceeds obtained as a result of the

offense.

### Substitute Assets Provision

35.   If any of the property described above as being

subject to forfeiture, as a result of any act or omission of the

defendant:

a.   cannot be located upon the exercise of due

diligence;

b.   has been transferred or sold to, or deposited

with, a third person;

c.   has been placed beyond the jurisdiction of the

Court;

d.   has been substantially diminished in value; or

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 981, 21 U.S.C. § 853(p), and 28 U.S.C. § 2461, to seek forfeiture of any other property of the defendant up to the value of the forfeitable property.

(Title 18, United States Code, Sections 981 and 1951;
Title 28, United States Code, Section 2461; and
Title 21, United States Code, Sections 841(a)(1) and 853.)

_____
FOREPERSON

_____
PREET BHARARA
United States Attorney

21