UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA

        -v.-                                            ORDER

THOMAS SCHMIDT,                         17-CR-154-1 (CS)

                Defendant.
-------------------------------------------------------x

Seibel, J.

       Before the Court is Defendant Thomas Schmidt's motion for reduction of sentence under 18 U.S.C. § 3582(c)(1), known as "compassionate release," (Doc. 115), and the Government's opposition thereto, (Doc. 117).[1]

       Defendant was sentenced principally to sixty months' imprisonment on his convictions for narcotics conspiracy and assault with a deadly weapon in aid of racketeering. (Doc. 91.) The parties agree that his release date is September 21, 2021. The Court has confirmed that he is scheduled to transition to a Residential Reentry Center, or halfway house, in March 2021.

       Under 18 U.S.C. § 3582(c)(1)(A), I may, after considering the factors set forth in 18 U.S.C. § 3553(a), reduce a sentence if extraordinary and compelling reasons justify such action and it is consistent with the relevant policy statements of the Sentencing Commission. Policy Statement 1B1.13 imposes similar requirements, along with the provision that the Defendant not be a danger to the safety of any other person or the community. Application Note 1 to Policy Statement 1B1.13 describes four potential extraordinary and compelling reasons: 1) the defendant has a terminal medical condition or because of serious health condition from which he is not expected to recover is substantially diminished in his ability to provide self-care; 2) the

---

[1] The Government is directed to send unredacted hard copies of its exhibits to chambers for filing under seal.

defendant is at least 65 years old, has served 75% or 10 years of his sentence, and is experiencing a serious deterioration in health because of the aging process; 3) family circumstances; and 4) an extraordinary and compelling reason other than or in combination with one of the above.[2]  "The defendant has the burden to show he is entitled to a sentence reduction" under Section 3582(c)(1)(A).  *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020).

Defendant is 56 years old.  He suffers from several ailments, including some – diabetes, heart disease[3] and obesity – that, according to the Centers for Disease Control ("CDC"), put him at increased risk for a severe case should he contract COVID-19.  He also suffers from hypertension, which the CDC says may be a risk factor.[4]  Defendant is housed at FCI Beckley, which has experienced an outbreak of COVID-19.  Luckily it appears to be on the wane, but cases in the county where it is located are still on the rise.[5]  The Government concedes that

---

[2] Section 1(D) of the Application Note states: "Other Reasons – As determined by the Director of the Bureau of Prisons [("BOP")], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the [other three reasons]."  But "Application Note 1(D) does not apply to compassionate release motions brought directly to the court by a defendant," *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020), so I am not constrained by the BOP's or the Application Note's interpretation of extraordinary and compelling circumstances, *see id.* at 237 ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion.").

[3] Defendant takes medication for high cholesterol, which alone would not amount to a risk factor, but he has also had a heart attack and undergone a cardiac catheterization.  (Doc. 85 ("PSR") ¶ 93.)

[4] His hypertension is controlled by medication, as the Government points out, but the Government has not supplied evidence from which I could infer that that negates it as a possible risk factor.

[5] There are currently nineteen positive inmates, down from 219, according to the Government.  The Department of Justice Office of Inspector General COVID-19 dashboard

Defendant's circumstances present an "extraordinary and compelling reason" within the meaning of 18 U.S.C. § 3582(c)(1)(A), and I agree that Defendant's medical conditions, combined with his confinement at a facility where the virus is present and social distancing is not possible, meet that standard.

I must next consider the § 3553(a) factors. Defendant was a leader of the New Rochelle Hells Angels. In that capacity he used lower-ranked members to distribute cocaine, oxycodone and marijuana. He also directed and planned a vicious hammer attack on a rival, although he did not directly participate. He left the Hells Angels about eighteen months later, in August 2014, but because of a falling out, not a change of heart. That said, he had no arrests in the period between then and his arrest in March 2017. He had nine prior convictions, but they all appear to be misdemeanors and date from 1984 through 1996. Of perhaps greater concern, he has not behaved well in prison. He has a discipline for assault, two for fighting and one for "cheeking" his medication,[6] all within the last approximately eighteen months. While I do not have any details on most of these incidents, and while I recognize that sometimes fights in prison may not be avoidable, this record is not a good sign. The main reason I am reluctant to grant Defendant's motion is that it would undermine prison discipline. Defendant lost twenty-seven days of good

---

reflects a significant drop in cases at the institution, but a continuing rise in cases in Raleigh County, West Virginia.

[6]"Cheeking" refers to pretending to take one's medicine while on the pill line, but hiding it in one's cheek instead. Defendant got caught by a nurse "cheeking" his Gabapentin, after which the medical staff said it would no longer prescribe him that drug. Presumably he intended to distribute the pill to another, a suspicion reinforced by his medical records, which reflect a concerted effort to get the medical staff to re-prescribe Gabapentin and a refusal to take the medications prescribed as an alternative.

time credit three times, and would otherwise be days away from a halfway house. Defendant and other prisoners need to understand that bad behavior in prison has costs.

Nevertheless, given how close Defendant is to release anyway, I do not think that it would be unjust, undermine respect for the law, introduce unwarranted sentencing disparity, or otherwise undermine the purposes of sentencing if, rather than serving three more months in prison and then six in a halfway house, Defendant served those nine months under home incarceration, given the increased risks to his health presented by continued imprisonment. The conditions will be a cost, because Defendant will be confined to home except for medical reasons. So confined, Defendant is unlikely to pose a danger to the community. In short, the risks presented by his remaining incarcerated outweigh the § 3553(a) factors that would be served by requiring him to finish his term.

Accordingly, the motion is granted and the term of imprisonment is reduced to time served. Defendant shall be released forthwith, on the following conditions – which are special conditions of supervised release in addition to the conditions of supervised release already imposed:

1. The defendant shall be subject to home incarceration, to be enforced by location monitoring technology determined at the discretion of Probation, at the residence approved by Probation until his originally scheduled Bureau of Prisons release date of September 21, 2021. During the period of home incarceration, the defendant must remain at his approved residence except as necessary for medical treatment, which requires prior notice to and approval by the Probation Department unless it involves a true emergency.

2. The defendant is to possess or have access to a phone that will allow video conferencing by the Probation Department.

3.     Defendant shall contact Supervisory U.S. Probation Officer Kevin Mulcahy (646-210-4075) upon his release.[7]

I am sticking my neck out for a prisoner who has not done anything to deserve leniency. I will regard it a serious violation of the trust I have placed in Defendant if he fails to abide by any of the previously imposed conditions of supervised release or any of the additional conditions set forth above, and I will not hesitate to return him to prison if his actions justify it. In other words, unless Defendant wants to go back to prison, he needs to comply strictly with every condition of supervised release and every instruction of his Probation Officer(s), and if he does not, he should not expect any patience, slack or leniency from me.

The Government is directed to supply a copy of this Order to the Bureau of Prisons and the Warden (or other appropriate official) at FCI Beckley. The Clerk of Court is directed to send a copy of this Order to Thomas Schmidt, No. 78857-054, FCI Beckley, Federal Correctional Institution, P.O. Box 350, Beaver, WV 25813.

Dated: December 16, 2020
       White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

---

[7] I am imposing the first condition to provide just punishment, avoid unwarranted disparities, recognize the seriousness of the offense and protect the public from further crimes. The second and third conditions are imposed to allow proper supervision by Probation.